## BREACH OF CONTRACT FOR THE SALE OF CATSUP.

Circuit Court of Hamilton County.

J. WELLER COMPANY V. COLUMBIA CONSERVE COMPANY.

Decided, July 24, 1909.

*Sales of Catsup—Action for Breach of Contract for the Sale of—Short-age in Measurement—Delay in Payment—Waiver—Charge of Court —Error—Custom and Usage—Pleading.*

1. Where no waiver is pleaded as to the most important of the breaches of a contract, it is error to charge the jury that the defendant had no right to rescind the contract if he had waived all the breaches of its material provisions.
2. If catsup had been sold by the barrel, and the testimony shows that it was customary and necessary to run the catsup into barrels and close them up while hot, there is an implied agreement between the parties that the shrinkage shall be borne by the purchaser.
3. And if there is a provision in the contract that the measurements shall be made at the place of shipment, it amounts to a condition precedent, and a refusal by the buyer to be bound by this provision justified the seller in repudiating the whole contract.

*Phares, Gusweiler & Phares,* for plaintiff in error.
*Paxton, Warrington & Seasongood,* contra.

GIFFEN, P. J.; SWING, J., and SMITH, J., concur.

This action is based upon an alleged breach of a contract of sale of 600 barrels of catsup at 16½ cents per gallon f. o. b. cars Cincinnati, terms—cash ten days, less one and one-half per cent. Delivery to be made seventy-five barrels at a time, as follows:  October 1, 8, 15, 22, 29 and November 5, 12 and 19, 1906. Barrels to be tightly coopered, and to be correctly gauged, and goods to be billed at net measurement. The failure to deliver the balance of the installments after delivery of the first two, constitutes the alleged breach of the contract.

The plaintiff, the Columbia Conserve Company, also avers full performance on its part. The defense is an alleged breach by the plaintiff in making payment long after the ten days from shipment, in deducting one and one-half per cent., and in deducting as shortage 199 gallons on the first car.

ducting as shortage 199 gallons on the first car and 220 gallons on the second car.

. Plaintiff, by reply, admits delay in payment a few days beyond the period of ten days and deduction of one and one-half per cent., but avers that the delays were with the consent of the defendant. It is nowhere averred, however, that the defendant consented to or waived the alleged breach in deducting 419 gallons from the amount billed. Upon the question of waiver the court charged the jury as follows:

"If the defendant waived all breaches of the material items and provisions of this contract committed by the plaintiff, then the defendant had no right to rescind the contract and refuse to carry out its part thereof, and by so doing rendered itself liable to respond in damages to the plaintiff."

No waiver was pleaded to the most important breach by the defendant, and hence it was error to give this instruction. *Insurance Company v. Baldwin,* 62 O. S., 368.

The following special instruction was given to the jury before argument at the request of plaintiff:

"If you find from the evidence that the plaintiff made certain deductions from the amount of the defendant's invoice on account of a claim of deficiency in the amount actually delivered you are not to take such deductions as a breach of contract sufficient to justify a rescission by the defendant, unless the deductions so made were made in such a way as to evince a renunciation of the contract by the plaintiff and a refusal to abide by its terms."

In view of the evidence that the measurement was made and deficiency ascertained by the plaintiff at Indianapolis where the cars were unloaded, the words "actually delivered" contained in this instruction would naturally lead the jury to believe that delivery was to be made at Indianapolis, although the court after argument instructed the jury in the general charge that the contract required delivery at Cincinnati, the place of shipment, and they might well find that the measurement thus made was correct, and therefore the deductions thus made did not evince a renunciation of the contract by the plaintiff.

Assuming that the question was one to be submitted to the jury, there was left to the jury too much room for speculation

as to what way of making deductions would evince a renunciation of the contract. If the conduct of the plaintiff in measuring the catsup at Indianapolis instead of Cincinnati, and deducting in accordance with measurement regardless of what loss occurred between such points, showed an intention on the part of plaintiff to treat subsequent shipments in the same manner, it evinced a plain renunciation of the contract in one of its important elements, which justified a recision by the defendant.

The same objection may be urged to special instruction No. 6 which, after quoting the terms of sale, time of deliveries and manner of gauging and billing goods, reads as follows:

"Before the seller under the contract is entitled to discontinue shipments and claim a cancellation by reason of an alleged breach on the part of the buyer, there must have been such breach on the buyer's part as evinced an intention not to be bound by the contract as a whole."

Just what particular breach or number of breaches would evince such intention the court does not say, although it does say in conclusion of this instruction:

"The mere fact that the discount was deducted after ten days had elapsed was not such a breach of the contract of sale as would warrant the defendant in refusing to continue deliveries."

The provision of the contract that the guage or measurement of the catsup should be made at the place of shipment is a material incident amounting to a condition precedent to any shipment, and if the plaintiff refused to be bound by this condition the defendant was justified in repudiating the whole contract.

This principle is announced in the case of *Norrington* v. *Wright*, 115 U. S., 188:

"In a mercantile contract, a statement descriptive of the subject-matter or of some material incident, such as the time or place of shipment, is ordinarily to be regarded as a warranty, or condition precedent, upon the failure or non-performance of which the party aggrieved may repudiate the whole contract."

The retention by the plaintiff of the one and one-half per cent. discount does not come within the rule, although we do not question the decision of *Supply Co.* v. *Cement Co.*, 4 C. C.—N. S.,

225, upon the facts there disclosed.   We are of opinion therefore that these two instructions were misleading and prejudicial.   The question whether the barrels should be filled, measured and bunged up while the catsup is hot or after cooling was fairly presented by special instruction No. 5 requested by the defendant, and there being no like instruction in the general charge it was error to refuse it.

The plaintiff gives no good reason for delaying payment several days beyond the ten days allowed, and the fact that its own measurement of the catsup at Indianapolis shows an outage of precisely two gallons in every barrel of the one hundred and seventy-seven shipped except four is convincing proof that the barrels were full when bunged up, and that the two gallons outage represents the shrinkage in cooling.

The testimony fairly shows that it was customary and necessary to run the catsup into the barrels and close the same while hot.   It was impliedly contemplated therefore by the parties that the shrinkage should be borne by the purchaser.   It follows that the verdict was not sustained by sufficient evidence.

Judgment reversed and cause remanded for a new trial.